UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

HARTFORD FIRE INSURANCE COMPANY,

    Plaintiff,

v.                                                                        C.A. No. 11-019-ML

GILBANE BUILDING COMPANY,
WILD PARTNERSHIP, INC.,
UNIQUE METAL WORKS, INC., and
PEERLESS INSURANCE COMPANY

    Defendants.

## MEMORANDUM AND ORDER

The Hartford Fire Insurance Company ("The Hartford"), a Connecticut corporation, filed this declaratory judgment action requesting a determination as to whether or not it has a duty to defend and indemnify Gilbane Building Company ("Gilbane"), a Rhode Island corporation, in an underlying state court tort action, <u>Gardiner v. Gilbane Building Co.</u>, No. PC 10-1062 (R.I. Super. Ct. filed Feb. 18, 2010). Gilbane now moves to dismiss the declaratory judgment action pursuant to Fed. R. Civ. P. 12(b)(6), or, in the alternative, for an order to stay this action until the underlying state court proceeding is resolved.

### I. Facts

Gilbane was the general contractor on the Waterplace Park building project located at 100 Exchange Street, Providence, Rhode Island. Gilbane subcontracted HVAC and plumbing work to

1

Arden Engineering Constructors, LLC ("Arden") who, in turn, subcontracted some or all of that work to Unique Sheet Metal, Inc. ("Unique"). Arden was covered by a general liability insurance policy that it purchased from The Hartford. On March 19, 2007, one of Unique's employees, Craig Gardiner ("Gardiner"), was injured when he slipped and fell while working on the building project.

On February 18, 2010, Gardiner filed a complaint against Gilbane in the Rhode Island Superior Court. There, Gardiner alleged various negligence claims including: failure to train, supervise, maintain, warn, and inspect. Gilbane was the only named defendant in the complaint. On February 9, 2011, Gilbane filed a third-party complaint against Arden, Unique, and H.Carr & Sons, Inc.[1] in Rhode Island Superior Court. In the third-party complaint, Gilbane alleges that Gardiner's injuries were the result of the negligence of the subcontractors, and, alternatively, that various trade agreements require the subcontractors to indemnify Gilbane against Gardiner's claims.

Gilbane now seeks to dismiss The Hartford's declaratory judgment action or, in the alternative, to stay this case until the conclusion of the underlying state court tort action. The question before the Court on the declaratory judgment action is whether, under the terms of Arden's insurance policy, The Hartford has a duty to defend and indemnify Gilbane in a tort proceeding in which the plaintiff alleges that Gilbane was solely negligent.

## II. Standard

Pursuant to Fed. R. Civ. P. 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). A court will "accept the well-pleaded

---

[1] Gilbane subcontracted for H. Carr & Sons, Inc. to perform "all spray-on fireproofing, drywall and acoustical material ceiling work, including providing various labor and material on the project." Def.'s Third-Party Compl. ¶ 9.

allegations in the plaintiff's complaint as true and draw all reasonable inferences in his favor." Giragosian v. Bettencourt, 614 F.3d 25, 27 (1st Cir. 2010) (quoting Morales-Tanon v. P.R. Elec. Power Auth., 524 F.3d 15, 17 (1st Cir. 2008)). A complaint, however, "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Uphoff Figueroa v. Alejandro, 597 F.3d 423, 429 (1st Cir. 2010) (quoting Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009)).

### III. Discussion

Gilbane moves to dismiss The Hartford's declaratory judgment action or, in the alternative, to stay the action on the basis that The Hartford's duty to defend and indemnify Gilbane is predicated on the outcome of the underlying state court action. Gilbane contends that the state and federal proceedings involve the same parties and the same issues and that to proceed would "require[] resolution of factual questions that will be litigated in the underlying state court proceeding." Def.'s Mot. to Dismiss 6, Docket No. 7. Gilbane essentially argues that the Court should exercise its discretion to abstain from hearing the declaratory judgment action.

A. <u>Abstention Analysis</u>

Under the Declaratory Judgment Act, a court "may declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a). A district court has discretion under the Declaratory Judgment Act to decide whether or not it will exercise jurisdiction, see Rossi v. Gemma, 489 F.3d 26, 38 (1st Cir. 2007), and a court has "no compulsion to exercise that jurisdiction." Wilton v. Seven Falls Co., 515 U.S. 277, 282 (quoting Brillhart v. Excess Ins. Co. of

America, 316 U.S. 491, 494 (1942)). "[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." Wilton, 515 U.S. at 282.

Gilbane's main contention is that the state court action is a parallel proceeding and that it would be improper for this Court to interfere with that pending action. Gilbane argues that "it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." Brillhart, 316 U.S. at 495. In deciding whether to hear a declaratory judgment action, no exclusive set of factors guides a court's exercise of discretion but a court should consider "the scope of the pending state court proceeding and the nature of defenses open there." Wilton, 515 U.S. at 283 (quoting Brillhart, 316 U.S. at 495). A court may also consider "whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, [and] whether such parties are amenable to process in that proceeding." Wilton, 515 U.S. at 283 (quoting Brillhart, 316 U.S. at 495).[2] In general, "the propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power." Wilton, 515

---

[2] This Court has found five factors to be useful in determining whether the abstention established under Wilton is appropriate:
(1) whether the same parties are involved in both cases; (2) whether the claims made in the declaratory judgment action can be adjudicated in the state court action; (3) whether resolution of the declaratory judgement action turns on factual questions that will be litigated in the state court action; (4) whether the issues presented are governed by state or federal law; and (5) what effect the declaratory judgment action is likely to have on potential conflicts of interest between the insurer and the insured.
Seaton Ins. Co. v. Clearwater Ins. Co., 736 F.Supp.2d 472, 476 (D.R.I. 2010) (quoting Standard Fire Ins. Co. v. Gordon, 376 F.Supp.2d 218, 225 n. 8 (D.R.I. 2005)); see also Employers Mut. Cas. Co. v. PIC Contractors, Inc., 24 F.Supp.2d 212, 215 (D.R.I. 1998).

U.S. at 287 (quoting Pub. Serv. Comm'n of Utah v. Wycoff Co. Inc., 344 U.S. 237, 243 (1952)).

The state court proceeding involves issues that are separate and distinct from the questions presented in the declaratory judgment action. As an initial matter, The Hartford is not a named party in the state court proceeding[3] but it remains an interested party as a result of the insurance policy that it issued to Arden and also as a result of Gilbane's third-party complaint, naming Arden as a third-party defendant. The Hartford's interests are potentially represented in the state court proceeding but, in addressing Gilbane's argument that the proceedings are parallel, the more specific question in this case is whether the state and federal actions involve parallel factual questions.

The state court tort action involves factual questions relating to Gilbane's alleged negligence and, through the third-party complaint, questions relating to the subcontractors' alleged negligence. The state court proceeding also presents questions regarding the subcontractors' various trade agreements and whether those agreements require that they indemnify Gilbane. These issues are not before this Court. Rather, at bottom, The Hartford seeks a declaration that it has no duty to defend or indemnify Gilbane in the pending state court action because "the allegations in that Action focus on Gilbane's own negligence, and additionally that Gilbane is not an additional insured under the Arden/Hartford Policy for Gilbane's own negligence." Pl.'s Obj. 5. This is a contract question involving insurance coverage rather than a question relating to the negligence of an alleged tortfeasor.

Gilbane raises several additional arguments in favor of abstention. Gilbane first argues that abstention is proper because the declaratory judgment action involves state law. State law is indeed implicated but the insurance coverage question before this Court is not the kind of "novel, unsettled,

---

[3] Rhode Island law prohibits an injured party from joining an insurer as a defendant. See R.I. Gen. Laws § 27-7-2.

difficult, complex, or otherwise problematic" issue that would weigh in favor of abstention. Standard Fire Ins. Co. v. Gordon, 376 F.Supp.2d 218, 231 (D.R.I. 2005) (quoting First Fin. Ins. Co. v. Crossroads Lounge, 140 F.Supp.2d 686, 695 (S.D.W.Va. 2001)). Gilbane further argues that the coverage question could be mooted by a finding of no liability in the state court tort proceeding. While true, putting off the coverage question puts The Hartford in the position of having to defend Gilbane through the conclusion of that litigation without any clarification as to whether it is obligated to do so. The benefit of a declaratory judgment action is that it "could well provide the much needed source of enlightenment and clarification in order that both parties can proceed to litigate issues fully aware of the responsibilities and duties, if any, each may owe to the other." Employers' Fire Ins. Co. v. Beals, 240 A.2d 397, 401 (R.I. 1968).

Gilbane also argues that a declaratory judgment by this Court will render Gilbane and The Hartford adversaries. Inherently, there is a conflict between the parties on the question of negligence. Gilbane's third-party complaint in the underlying state court action alleges that Gardiner's injuries were caused by the negligence of Arden and the other subcontractors. Meanwhile, The Hartford avoids liability if Gilbane is found to be solely negligent. At the same time, however, The Hartford potentially stands to avoid any liability if Gilbane is found to be entirely without fault in the negligence action. A decision by this Court on the insurance coverage question, one way or the other, neither creates nor resolves this tension. Such a decision would, however, help the parties manage their defenses and would provide The Hartford with "immediate guidance as to whether ... [it has] an ongoing obligation to defend." Hartford Fire Ins. Co. v. R.I. Public Transit Auth., 233 F.3d 127, 132 (1st Cir. 2000). A decision by this Court on the coverage question could benefit the parties by establishing the contours of their various ongoing obligations to one another in the underlying tort

action.

Gilbane's argument in favor of abstention fails to persuade the Court that such abstention is appropriate.

### B. The Hartford's Reservation of Rights

On May 10, 2011, the Court heard argument on Gilbane's motion to dismiss. There, Gilbane raised a question as to whether or not The Hartford, in agreeing to fund Gilbane's representation, had waived its reservation of rights, triggering an unqualified duty to defend. At that time, Counsel for Gilbane, in support of its argument, presented the Court with a December 14, 2010, letter from The Hartford, the body of which stated:

> This letter will serve as a formal response to your correspondence of October 26, 2010.
>
> The Hartford Fire Insurance Company ("The Hartford") will agree to compensate Toomey & Yudysky, LLP at a rate to be agreed upon to continue to defend the interests of Gilbane Building Company in the above captioned matter.
>
> Pursuant to the provisions of Employers Fire Ins. Co. v. Beals, 240 A.2d 397 (R.I. 1968) The Hartford will engage John J. McGivney to represent its interests in the litigation. It is expected that Mr. McGivney will enter his appearance as co-counsel for Gilbane and will work with you in the defense of the action. The procedure set forth above is the second alternative provided for under Beals.

Dec. Letter, Docket No. 14-8. Both parties supplemented their filings with additional letters.[4] After

---

[4] "If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). An exception exists, however, "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiff's claim; or for documents sufficiently referred to in the complaint." Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009) (quoting Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30, 33 (1st Cir.)). In this case, The Hartford's complaint references its reservation of rights and the parties do not dispute the authenticity of the letters submitted.

7

reviewing those filings, the Court concludes that, for the reasons set for below, Gilbane's argument on this point does not require dismissal of this action.

In a June 17, 2010, correspondence with Gilbane, The Hartford stated that it "agrees, subject to a full and complete reservation of rights as outlined herein, to fund the reasonable and necessary costs to defend Gilbane." June Letter, Docket No. 14-4. That reservation included the right to "immediately withdraw from defending Gilbane at any time" or to "initiate a declaratory judgment action." Id. The parties then began negotiating various arrangements under which The Hartford would provide that defense. During those negotiations, Gilbane expressly acknowledged The Hartford's reservation of rights in both its July 16, 2010, and its October 26, 2010, correspondence. The Hartford reiterated its position in its August 3, 2010, letter by expressly stating that "nothing contained in this letter should be construed as a waiver of the prior-issued Reservation of Rights letter." August Letter, Docket No. 14-6.

In the December 14, 2010, letter The Hartford agreed, per Gilbane's request, to pay the fees of attorneys selected by Gilbane to represent its interests in the state court action. The letter acknowledged that, to defend its own interests, The Hartford would itself engage counsel who would "enter his appearance as co-counsel for Gilbane." Docket No. 14-8. Having now reviewed all of the correspondence between Gilbane and The Hartford, it is clear that the parties were negotiating under Employers' Fire Ins. Co. v. Beals, 240 A.2d 397 (R.I. 1968) (addressing various arrangements by which an insurer may defend an insured when there is a conflict). Contrary to Gilbane's counsel's assertion at oral argument, The Hartford did not revoke it reservation of rights.

Accepting the allegations in The Hartford's complaint as true and drawing all reasonable inferences in its favor, Gilbane has failed to meet its burden to show that a dismissal of this action is

appropriate.

## IV. Conclusion

For the foregoing reasons, Gilbane's motion to dismiss or, in the alternative, to stay is DENIED.

SO ORDERED

*Mary M. Lisi*

Mary M. Lisi
United States District Judge
June 16, 2011